IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN LAVIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Case No.   03-503-GPM-PMF |
| ) | |
| DONALD SNYDER, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendant Dr. Burrows' motion to dismiss (Doc. No. 41), which will be evaluated as a request for summary judgment.[1]  The motion is opposed (Doc. Nos. 73, 133).

In this § 1983 action, plaintiff presents Eighth Amendment challenges to the conditions of his confinement at Menard Correctional Center.  With respect to defendant Dr. Burrows, he claims that he was deprived of his right to be free from cruel and unusual punishment when Dr. Burrows responded to his serious medical need for treatment of a spinal impairment with deliberate indifference (Count I) and subjected him to inhumane prison conditions (Count II).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To determine whether

---

[1] The plaintiff was notified of the conversion and received the opportunity to present evidence (Doc. No. 46).

there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### I.     Qualified Immunity

Defendant Dr. Burrows asserts the defense of qualified immunity, arguing that his conduct does not violate the Constitution. Plaintiff argues that Dr. Burrows is not entitled to assert this defense.

Dr. Burrows provided neurology services to plaintiff pursuant to his employment with the Southern Illinois Neurologic Institute which, in turn, had a medical services contract with Health Professionals, Ltd.(HPL), by which it agreed to provide neurology services to persons confined or detained with the Illinois Department of Corrections (IDOC). Pursuant to the terms of his agreement, Dr. Burrows was an independent contractor. He was not employed by HPL, the IDOC, or the State of Illinois.

Dr. Burrows evaluated plaintiff's medical condition at his private office in Belleville, Illinois, in May and August, 2001, and in January, 2002. Dr. Burrows also followed plaintiff's care while he was hospitalized at St. Elizabeth's Hospital. He did not provide services to plaintiff at Menard Correctional Center.

A private party may assert the defense of qualified immunity in certain circumstances. *Richardson v. McKnight*, 521 U.S. 399 (1997)(private prison guards are not entitled to qualified immunity). Availability of the defense rests on consideration of two factors: the history of immunity and public policy considerations. *Id*. On one occasion, the Seventh Circuit Court of Appeals held that a private medical director was entitled to qualified immunity. *Williams v. O'Leary*, 55 F.3d 320

(7th Cir. 1995). Otherwise, it does not appear that the courts have granted immunity to private physicians. Also, the materials submitted do not suggest that private physicians face significant litigation distractions, such that immunity is needed to offset the risk that physicians would be unwilling to provide medical care to patients who need medical attention. Hence, Dr. Burrows has not met the historical and policy considerations needed to assert the qualified immunity defense. For purposes of this motion, the defense should be denied.

## II.     Deliberate Indifference

Dr. Burrows also seeks judgment in his favor on Count I, arguing that he did not respond to plaintiff's serious medical needs with deliberate indifference. Plaintiff argues that Dr. Burrows knew of an obvious risk of serious harm and failed to take reasonable steps to prevent pain and injury. Dr. Burrows is a medical doctor, with certifications in several fields of medicine, including neurology. He evaluated plaintiff's condition at his private office on May 7, 2001. At that time, he heard plaintiff describe uncontrollable convulsions in his legs and difficulties with his balance and gait. Dr. Burrows performed a physical examination and a neurological exam and found a possible spinal deficit. He recommended diagnostic studies targeting plaintiff's legs, spine, and brain (EMG, nerve conduction studies, MRI). After those tests were performed, Dr. Burrows reviewed the results and formed the impression that there was a false localization of spinal symptoms. He ordered an additional test (MRI) and interpreted the results as showing a large disc protrusion.

At some point, Dr. Burrows may have reviewed reports describing the formation of a spur on a portion of plaintiff's spine. He did not discuss the spur with plaintiff or direct prison officials to house plaintiff in a private hospital or the prison's health care unit.

Dr. Burrows saw plaintiff at his private office again on August 10, 2001. At this time, he

recommended further evaluation by a neurosurgeon.  This decision was based on his belief that treatment of plaintiff's spinal impairment would most likely require surgery.

On August 18, 2001, plaintiff fell.

In September, 2001, Dr. Burrows consulted with Dr. Schultz.  Dr. Schultz admitted plaintiff to the hospital and performed surgery on September 27, 2001.  Dr. Burrows did not ask Dr. Schultz to remove a spur formation during surgery.

After plaintiff was discharged from surgery, he was assigned to live with the general prison population.  Dr. Burrows did not participate in the housing decision.

On October 4, 2001, plaintiff fell into another inmate and had to defend himself.  In the process, he suffered further injury.[2]

Dr. Burrows saw plaintiff in his private office again on January 10, 2002.  He performed a full neurological examination along with nerve conduction studies.  Dr. Burrows interpreted the test results as showing upper and middle brachial plexopathy.  He recommended additional testing (MRI, CT, myelogram).

Additional testing was performed in February, 2002.  Some of those test results were interpreted as showing a spur on a portion of plaintiff's spine "indenting on the cord slightly flattening the cord" (Doc. No. 133-3, p. 5).

In order to establish a violation of the Eighth Amendment in a case involving medical care, plaintiff must prove deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  When a person challenges professional treatment decisions under the deliberate

---

[2] Plaintiff has some medical knowledge but lacks medical education, experience, skills, and training.  He is not qualified to give opinions regarding the cause of his injuries, medical standards, or appropriate forms of medical treatment.  Fed. R. Evid. 702.

indifference standard, he must show a substantial departure from accepted professional judgment practices or standards. In those circumstances, it is reasonable to infer that the treatment decisions were not based on professional judgment. *Estate of Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Plaintiff argues that Dr. Burrows failed to arrange surgery in a timely manner and should have taken additional steps to diagnose and treat his neurological symptoms and prevent further deterioration of his spinal impairment. Plaintiff believes Dr. Burrows should have made additional efforts to relieve his symptoms, arrange surgery before his condition deteriorated, and prevent the spur on his spine from causing further injury to his spinal cord. Plaintiff believes the delay and lack of additional medical care caused permanent harm.

The materials on file could support a finding that plaintiff had serious medical ailments during the time he sought attention from Dr. Burrows. However, no evidence shows that Dr. Burrows' diagnostic efforts or treatment decisions are far afield from the medical norm, such that a jury could reasonably infer that those efforts and decisions were not based on the exercise of professional judgment. Because the evidence could not support a finding that Dr. Burrows responded to plaintiff's serious medical needs by making a substantial departure from accepted medical standards, Dr. Burrows is entitled to judgment in his favor on Count I.

### III.   Inhumane Prison Conditions

Dr. Burrows also seeks judgment in his favor on Count II, arguing that he never treated plaintiff in prison and had no knowledge of or input regarding the conditions plaintiff encountered at Menard Correctional Center. Plaintiff responds that Dr. Burrows had authority to issue directives regarding his confinement that might have prevented additional harm.

A prison official is liable for inmate exposure to cruel and unusual conditions of confinement

only where the defendant has the requisite knowledge and intent. The official must know about the inhumane conditions and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994).

The materials submitted show that Dr. Burrows provided neurological services to plaintiff in his private office and at St. Elizabeth's Hospital. No facts suggest that Dr. Burrows knew that plaintiff was assigned to live with the general prison population after his surgery. Because Dr. Burrows did not have the requisite knowledge and intent, he is entitled to judgment in his favor on Count II.

### IV. Conclusion

IT IS RECOMMENDED that defendant Dr. Burrows' motion for summary judgment (Doc. No. 41) be GRANTED. At the close of this case, judgment should be entered against plaintiff and in favor of defendant Dr. Burrows on Counts I and II.

SUBMITTED:   October 17, 2006   .

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**