IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN LAVIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No. 03-503-GPM-PMF |
| | ) |
| DONALD SNYDER, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are motions for summary judgment filed by defendants Walls, Grubman, Walker, Bendinger, Bauer, Health Professionals, Ltd., Feinerman, Doughty, and Kumar (Doc. Nos. 170, 172).[1] Also submitted is a *sua sponte* recommendation that plaintiff's claims against defendant Keeler be dismissed without prejudice for lack of service of process.

In this § 1983 action, plaintiff presents Eighth Amendment challenges to the conditions of his confinement at Menard Correctional Center. The summary judgment motions target the following claims:

Count I - allegations that defendants Walls, Grubman, Health Professionals Ltd., Feinerman, Doughty, and Kumar responded to plaintiff's serious medical needs with deliberate indifference.

Count II - allegations that these same defendants subjected plaintiff to inhumane conditions of confinement.

Count III - allegations that defendants Walker, Bendinger, and Bauer used excessive force while escorting plaintiff from the health care unit to the segregation unit on October 5, 2001.

---

[1] In the Amended Complaint, Health Professionals, Ltd. is mis-identified as Health Care Professionals. The correct names are used in this Report.

## Defendant Keeler

Defendant Keeler is named as a defendant in Count III. Deadlines for service of process, discovery, and dispositive motions have passed, and defendant Keeler remains unserved.

Rule 4(m) of the Federal Rules of Civil Procedure provides that, if service is not made within 120 days, the court shall dismiss without prejudice as to that defendant or direct that service be effected within a specified time, provided that if there is a showing of good cause, the time for service shall be extended for an appropriate period. Fed. R. Civ. P. 4(m).

The service deadline was extended (Doc. Nos. 72, 101). The U.S. Marshals Service made reasonable efforts to locate and serve defendant Lt. Keeler, without success. This defendant could not be located at the address provided by plaintiff, and a service address was not available from the Illinois Department of Corrections (Doc. No. 51). Plaintiff's claim against defendant Keeler should be dismissed without prejudice for lack of service of process.

## Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[2]

**I.    Count I - Deliberate Indifference to Serious Medical Needs**

---

[2] Arguments and exhibits filed out of time without leave of Court are not considered.

In order to establish a violation of the Eighth Amendment in a case involving medical care, plaintiff must demonstrate deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). Medical negligence or negligence in failing to detect a constitutional violation does not suffice. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. *Crowder v. True*, 74 F.3d. 812 (7th Cir. 1996), *quoting Farmer v. Brennan*, 114 S.Ct. 1970, 1979 (1994).

**Respondeat Superior**. Defendants Walls and Grubman challenge plaintiff's medical care claim on the basis that plaintiff is proceeding on a theory of respondeat superior. Plaintiff argues that these defendants are liable for the actions of other parties. He also claims that defendant Walls is liable because he had an administrative duty to review inmate grievances. There is no respondeat superior liability under § 1983. An award of damages must be based on evidence showing that the defendant was personally involved in a Constitutional deprivation. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999). In some situations, evidence that a prison official failed to respond to many letters can establish that the official knew about and ignored unconstitutional conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)(inferring superintendent's knowledge and consent to deprivation of scribe materials in access to courts claim). However, there must be evidence of adequate notice of a Constitutional violation. That is, details sufficient to advise the official that intervention is required must be provided. *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996)(no showing that inmate communications informed a supervisor of an excessive risk to health or safety in medical care case). Such evidence permits a finding that the official actually knew about a Constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some other way personally participated. *Id*.

Plaintiff was confined at Menard Correctional Center between April, 2001, and May, 2002. During that time, defendant Walls was the warden and defendant Grubman was the administrator of the health care unit. These defendants were not physicians. They lacked the qualifications to prescribe treatment for plaintiff's medical problems. Hence, they relied on medical doctors at the facility to assess and treat plaintiff's medical problems.

In October, 2001, the director of the Illinois Department of Corrections approved an administrative directive providing, in part, that wardens shall review materials submitted by a grievance officer.

Between April, 2001, and May, 2002, plaintiff's medical needs were evaluated by a number of physicians, including Drs. Feinerman, Burrows, Shultz, Doughty, and Kumar. Numerous diagnostic procedures were performed in the prison facility and at outside facilities, including clinical examinations, blood tests, magnetic resonance imaging, x-rays, EMG, nerve condition studies, a lumbar puncture test, somatosensory evoked potential tests, a whole body bone scan, myelogram, and CT scans. The facility physicians referred plaintiff to a neurologist and a neurosurgeon. Plaintiff was admitted to the prison infirmary on multiple occasions. He was diagnosed with spastic paraparesis, hemisensory T10 level abnormality, a neurodeficit of undetermined origin, degenerative disc disease, cervical myelopathy with a spastic gait, and a congenitally narrow spinal canal. Treatment was recommended and provided, including surgery (anterior cervical diskectomy), prescribed medications (Motrin, Tylenol 3, Baclofen, Keflex, Prednisone), physical therapy, and a cervical collar. Additionally, special restrictions were ordered to alter the conditions of plaintiff's confinement (no work assignment status, feed-in status, low bunk permit, low gallery permit).

In July, 2001, a copy of a medical furlough notice was sent to defendant Walls.

Plaintiff was admitted to the facility health care unit on August 27, 2001. He was discharged on September 15, 2001.

On September 21, 2001, plaintiff was involved in an altercation with his cell-mate and took steps to defend himself.

On October 4, 2001, plaintiff was escorted to the health care unit. The trip was completed via wheelchair after plaintiff experienced difficulty walking the full distance.

In November and December, 2001, and in January, 2002, plaintiff prepared grievances regarding his medical treatment.

On January 23, 2002, an assistant warden sent correspondence to plaintiff, explaining that medical records had been reviewed and that plaintiff was receiving adequate medical care. A copy of that letter was sent to defendant Walls.

In March, April, and May, 2002, defendant Grubman read plaintiff's grievances, reviewed plaintiff's medical records, and sent correspondence to a grievance officer. She formed the impression that plaintiff was receiving adequate treatment for all his medical problems.

Defendant Walls did not personally review plaintiff's grievances; rather, he authorized a designee to handle that duty.

The evidence, construed in plaintiff's favor, could not support findings that defendant Walls or defendant Grubman actually knew about and disregarded a substantial risk of harm due to inadequate access to medical treatment. After plaintiff voiced concerns regarding his medical treatment, defendant Grubman reviewed plaintiff's medical records and formed the impression that plaintiff was receiving adequate care. Defendant Walls may have received documents indicating

that plaintiff was sent for a medical furlough and that correspondence had been sent to address plaintiff's concerns regarding his medical care, with the indication that he was receiving adequate medical care. That evidence does not reasonably permit an inference that defendant Walls actually knew that plaintiff faced a serious risk of harm due to inadequate medical care and disregarded the risk or that he directed, authorized, approved, or otherwise participated in decisions regarding plaintiff's medical care.

In sum, plaintiff has not presented evidence that could reasonably support a finding that these defendants were personally involved in a Constitutional deprivation. At the conclusion of this case, summary judgment should be entered in favor of defendants Walls and Grubman on Count I.

**Significance of Bone Spur**. Defendants Feinerman, Doughty, Kumar and Health Professionals Ltd. seek judgment in their favor with respect to plaintiff's position that a bone spur on his spine qualifies as a serious medical need. Plaintiff claims that a bone spur was detected after surgery was performed. He believes the spur existed prior to the surgery, that the spur indents his spinal cord and causes symptoms, and that the defendants disregarded a serious medical risk by failing to detect the bone spur and arrange for its surgical removal.

A medical need is objectively serious if it has been diagnosed by a physician as mandating treatment or is so obvious that a lay person would easily recognize the need for a doctor's attention. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997). Such facts permit the inference that the defendant drew the inference that plaintiff faced a substantial risk of serious harm.

Dr. Feinerman's affidavit shows that a bone spur is extra bone that grows or develops on a normal bone. A bone spur can pose physical danger when growth or positioning interferes with the function of other body organs. He evaluated plaintiff's medical condition on 12 occasions between

April 12 and August 29, 2001. He never saw evidence that plaintiff suffered from symptoms caused by a bone spur in his back or neck and reviewed no reports suggesting that a bone spur was responsible for plaintiff's symptoms.

Defendant Doughty evaluated plaintiff's medical condition 26 times between April and November, 2001. In August, 2001, he evaluated plaintiff's symptoms and noted that treatment was being provided by a neurologist and that further evaluation by a neurosurgeon had been scheduled. He ordered special restrictions for plaintiff, observed that plaintiff was not wearing his cervical collar, and reminded plaintiff to wear his cervical collar on a daily basis. In September, 2001, Dr. Doughty evaluated plaintiff's condition as stable and found that plaintiff's neurological condition was unchanged.

In August, 2001, Dr. Schultz evaluated plaintiff's condition and diagnosed cervical myelopathy secondary to degenerative disc disease superimposed on a congenitally narrow spinal canal. Dr. Schultz performed cervical decompression surgery on September 27, 2001, at St. Elizabeth's Hospital. Defendants Feinerman, Doughty, and Kumar did not participate in the surgery.

Defendant Doughty evaluated plaintiff's condition following surgery. He did not review any reports suggesting that plaintiff had a bone spur in his neck and deferred treatment of plaintiff's back and neck problems to Drs. Burrows and Shultz.

Defendant Kumar evaluated plaintiff on three occasions between October, 2001, and April, 2002. He prescribed medications, ordered special restrictions, and ordered plaintiff to wear his cervical collar. He did not examine plaintiff's cervical spine or review reports from radiologists, neurologists, or neurosurgeons. He never saw any evidence that plaintiff suffered from a bone spur and relied on the recommendations of Drs. Burrows and Shultz in caring for plaintiff's back

problems.

On February 22, 2002, a radiologist interpreted a CT scan of plaintiff's cervical spine as showing a small spur at the C5-6 disc space "extending posterior by 2 mm indenting on the cord slightly flattening the cord."

In May, 2003, while plaintiff was confined at Pinckneyville Correctional Center, a physician reported that plaintiff's problems from cervical disc disease did not improve significantly with physical therapy. Additional evaluation by a neurologist or neurosurgeon was suggested.

The materials submitted do not explain the medical significance, if any, of the bone spur described in the February 22, 2002, radiology report. Although plaintiff received physical therapy following surgery, no evidence demonstrates that therapy was prescribed based on a diagnosis of a medically significant bone spur. A bone spur is not a condition that a lay person would easily perceive as requiring medical treatment.

In sum, the evidence could not support a finding that plaintiff had a serious need for medical treatment of a bone spur. To the extent that plaintiff seeks relief from defendants Feinerman, Doughty, Kumar, and Health Professionals Ltd. for failure to provide treatment for a bone spur, these defendants are entitled to judgment in their favor.

**Deliberate Indifference**. Defendants Feinerman, Doughty, Kumar, and Health Professionals Ltd. also seek judgment in their favor, claiming that they did not respond to plaintiff's serious health concerns with deliberate indifference.

Deliberate indifference may be inferred when a medical professional's diagnostic or treatment decision substantially departs from accepted professional judgment, practice, or standards. Such conduct permits the inference that the person responsible did not use professional judgment in making the decision. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

According to the affidavits on file, the various forms of medical attention provided to plaintiff by defendants Feinerman, Doughty, and Kumar was appropriate and complied with the applicable standard of medical care. While plaintiff clearly feels that he received substandard medical care, his lay opinion does not create an issue for trial. Plaintiff has some medical knowledge but is not qualified to express an opinion regarding medical standards or noncompliance with medical standards. Fed. R. Evid. 702. Moreover, a difference of opinion regarding the way in which plaintiff's medical conditions were treated does not give rise to a constitutional violation. *Garvin v. Armstrong*, 236 F.3d 896 (7th Cir. 2001).

### Count II - Conditions in the Health Care Unit

**Absence of Physical Injury**. Defendants Grubman, Walls, Feinerman, Doughty, Kumar, and Health Professionals Ltd. seek judgment in their favor on Count II, claiming that the evidence does not show that plaintiff suffered physical injury as a result of any exposure to adverse conditions of confinement in the health care unit. Plaintiff argues that these defendants were aware that he faced a risk of physical injury when he was discharged from the health care unit and are strictly liable for physical injuries resulting from an altercation with his cell-mate on September 21, 2001. He argues further that he suffered physical injuries on October 4, 2001, while restrained with shackles.

A prison official is liable when an inmate is deprived of the minimal civilized measure of life's necessities, creating an excessive risk to inmate health or safety. The official must know about the inhumane conditions and disregard the risk. *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994). Pursuant to 42 U.S.C. § 1997e(e), "no Federal action may be brought by a prisoner . . . for mental or emotional injury suffered in custody without a prior showing of physical injury." This statute

requires a showing of physical injury when compensatory damages are requested as the sole remedy. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003).

Plaintiff was admitted to the facility health care unit on August 27, 2001. On September 12, 2001, he prepared a grievance regarding the cell conditions in the health care unit, describing restricted access to personal items, functional issues with the sink and toilet, and exposed electrical wiring. Plaintiff was discharged from the health care unit on September 15, 2001.

On December 6, 2001, the Administrative Review Board denied plaintiff's grievance and sent a copy of the decision to defendant Walls.

In February and March, 2002, plaintiff was diagnosed with an adjustment disorder. When plaintiff was deposed, he could not recall any physical injuries resulting from the conditions he experienced in the health care unit.

The materials submitted could support findings that plaintiff suffered physical injuries on September 21 and October 4, 2001. However, no evidence links those physical injuries to the conditions plaintiff claims to have been exposed to in the prison health care unit. Evidence that plaintiff's cell-mate inflicted injury following plaintiff's release from the health care unit on September 15, 2001, and that plaintiff was subsequently injured while wearing shackles is not relevant to Count II.

Because no evidence shows that plaintiff suffered a physical injury as a result of the conditions he experienced in the health care unit, plaintiff may not recover compensatory damages under Count II. However, as noted above, § 1997e(e) bars recovery when the sole remedy requested is compensatory damages. Plaintiff is seeking "one million dollars for every proven constitutional violation." (Doc. No. 13). A demand for such a large sum indicates that plaintiff is seeking punitive

damages. *See Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999). Because § 1997e(e) does not bar an award of punitive damages, summary judgment is not warranted on this basis.

**Qualified Immunity.** Defendants Walls and Grubman may be asserting the defense of qualified immunity; although it is difficult to say so with certainty. In their brief, these defendants outlined the applicable legal standard without discussing how that standard applies to facts relating to Count II (Doc. No. 171-1). Because any argument in favor of qualified immunity on Count II is underdeveloped, the defense is not considered at this time.

## Count III - Excessive Force

**Exhaustion of Administrative Remedies**. Defendants Walker, Bendinger, and Bauer seek dismissal of Count III on the basis that plaintiff failed to exhaust administrative remedies. Plaintiff argues that he used all available remedies or that the defendants are estopped from relying on the defense.

An inmate complaining about prison conditions must exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion requires compliance with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Although exhaustion of administrative remedies is a precondition to suit, 42 U.S.C. § 1997e(a); *Massey v. Helman*, 259 F.3d 641, 645-46 (7th Cir. 2001), the defendants have the burden of proving this defense. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). Because prison officials cannot exploit the requirement through endless delay, inmates can point to a failure to respond to a grievance to show that the administrative process is not available. *See Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002).

According to the Illinois Administrative Code and the affidavit signed by Sherry Benton, a

grievance procedure is available to Illinois inmates. Inmates must present concerns of this nature through three stages beginning with an informal attempt to resolve the complaint, progressing through a formal review by a grievance officer and the warden, and ending with an appeal to the Director via the Administrative Review Board (ARB). 20 Ill. Adm. Code § 504.810. Ms. Benton searched records compiled by the ARB and could not locate any grievance from the plaintiff regarding assault by staff members at Menard Correctional Center on October 5, 2001.

On December 5, 2001, plaintiff prepared a grievance regarding various issues, including staff conduct staff on October 5, 2001. He gave the grievance to a counselor, who prepared a timely response. At some point, plaintiff sent correspondence to defendant Walls, complaining about a lack of response to grievances. On December 17, 2002, plaintiff wrote to a grievance board, complaining about a lack of response to his grievances.

On January 23, 2002, an assistant warden responded to plaintiff's initial correspondence, explaining that a grievance officer had not yet processed plaintiff's grievances.

On March 6, 2003, while plaintiff was confined at Lawrence Correctional Center, he prepared a grievance complaining about old, unanswered grievances filed at Menard Correctional Center. The materials submitted could support a finding that a grievance officer never responded to plaintiff's December 5, 2001, grievance. Because plaintiff has presented evidence demonstrating that the last portion of the administrative remedy procedure was not available, dismissal for failure to complete the administrative remedy process is not warranted.

**Defendant Bauer's Presence**. These defendants also seek judgment in their favor, claiming that defendant Bauer was not present at Menard Correctional Center on October 5, 2001. This issue remains to be resolved at trial, as plaintiff's testimony will show that Bauer was present and

participated in the events described in the Amended Complaint. Summary judgment is not warranted on Count III.

## Conclusion

IT IS RECOMMENDED that defendants' motions for summary judgment (Doc. Nos. 170, 172) be GRANTED in part and DENIED in part. At the conclusion of this case, judgment should enter in favor of defendants Walls, Feinerman, Kumar, Doughty, Grubman, and Health Care Professionals on Count I.

IT IS FURTHER RECOMMENDED that plaintiff's claim in Count III against defendant Keeler be DISMISSED without prejudice for lack of service of process.

**SUBMITTED:   January 12, 2007   .**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**